ESTATE OF AIMEE MAGNUS FLANIGAN, DECEASED, PETER M. FLANIGAN, PERSONAL REPRESENTATIVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ESTATE OF HORACE C. FLANIGAN, DECEASED, PETER M. FLANIGAN, PERSONAL REPRESENTATIVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
ESTATE OF FLANIGAN v. COMMISSIONER
Docket No. 8302-80, 8303-80.
United States Tax Court
T.C. Memo 1982-443; 1982 Tax Ct. Memo LEXIS 300; 44 T.C.M. (CCH) 680; August 3, 1982. John S. Nolan and Peter Matwiczyk, for the petitioners. Thomas R. Ascher, for the respondent. SCOTT MEMORANDUM OPINION SCOTT, Judge: Respondent in these consolidated cases determined deficiencies in the estate taxes of the estate of Aimee Magnus Flanigan in the amount of $3,261,527.73 and the estate of Horace C. Flanigan in the amount of $4,587,263.03. Some of the issues raised by the pleadings have been disposed of by *303 agreement of the parties leaving for decision the following: (1) whether the estate of Aimee Magnus Flanigan is entitled to a charitable deduction because of the provisions of section 2055(b)(2); [1] and (2) whether Horace C. Flanigan exercised the power of appointment granted to him under his late wife's will in favor of qualified charities so as to entitle his estate to a charitable deduction. All of the facts have been stipulated and are found accordingly. Horace C. Flanigan and Aimee Magnus Flanigan were husband and wife at the time of Mrs. Flanigan's death on August 19, 1976. Mr. Flanigan was 86 years old when Mrs. Flanigan died. Mr. Flanigan died on June 15, 1978. Both Mrs. Flanigan and Mr. Flanigan died testate. Peter M. Flanigan is the duly appointed personal representative of the estate of Aimee Magnus Flanigan and is also the duly appointed personal representative of the estate of Horace C. Flanigan. At the respective times of the filing of the two petitions herein, Peter M. Flanigan resided in Palm Beach, Florida. *304 A Federal estate tax return for the estate of Aimee Magnus Flanigan was filed on May 19, 1977, with the Internal Revenue Service Center, Chamblee, Georgia. A Federal estate tax return for the estate of Horace C. Flanigan was filed on March 14, 1979, with the office of the Internal Revenue Service in West Palm Beach, Florida. The last will and testatment of Aimee Magnus Flanigan was executed on January 14, 1975. The will provided for specific bequests of Mrs. Flanigan's tangible personal property and real property and for cash gifts in specified amounts to each of two granddaughters and to certain specifically named charities. The residue of the estate was to be used to establish (1) a marital deduction trust for the benefit of Mr. Flanigan and (2) trusts for the benefit of each of Mrs. Flanigan's four children and her grandchildren. The will specifically provided that all estate, inheritance, and death taxes were to be charged against that portion of the residue which was to be used to establish the trusts for the benefit of the children and grandchildren. The will provided, in pertinent part, with respect to the marital deduction trust, as follows: A. If my spouse shall *305 survive me * * *, I give, devise and bequeath to the fiduciary of the trust created hereunder * * * (a) such fractional share of the property comprising my residuary estate as will result in the maximum allowable marital deduction, as finally determined for federal estate tax purposes in my estate, less (b) all property and interests therein which pass or have passed to my spouse under other provisions of this will or otherwise than under this will, but only to the extent that such property and interests are included in my gross estate and allowed as a marital deduction for federal estate tax purposes. * * * I direct the fiduciary of the Marital Deduction Trust to hold such fractional share of the property comprising my residuary estate, IN TRUST, to manage, invest and reinvest the same, to collect the income thereof and, after paying therefrom the necessary expenses of administration which are properly chargeable against and payable out of such income, to pay the net income to my spouse, in annual or more frequent installments, during my spouse's life. In addition to the net income of this trust, I authorize and empower the fiduciary, at any time and from time to time, to transfer *306 and pay over to or apply for my spouse's benefit so much of the principal of the Marital Deduction Trust, including the whole thereof, as the fiduciary, in the exercise of absolute discretion, may consider appropriate, suitable or desirable for my spouse's comfort and welfare, without regard to my spouse's income or other resources. Upon my spouse's death, the fiduciary shall transfer and pay over the then remaining principal, if any, of the Marital Deduction Trust as it is then constituted, together with any accrued and undistributed income, to and among or for the benefit of such persons or corporations, including my spouse, my spouse's estate, my spouse's creditors or the creditors of my spouse's estate, in such amounts or proportions, and in such lawful interests or estates, whether outright or in trust, as my spouse may appoint by Last Will and Testament containing a specific reference to this power. In default of such appointment, or to the extent that such appointment shall for any reason be ineffective, the fiduciary shall transfer and pay over, unless my spouse's will provides otherwise, to my spouse's legal representatives from such principal and income (herein "the unappointed *307 property"), at such time or times as my spouse's legal representatives shall request in writing, an amount equal to the difference between (i) the amount of all estate, inheritance, succession, transfer and other death taxes payable with respect to all property includible in my spouse's gross estate for federal estate tax purposes, and (ii) the amount of all such taxes which would have been payable if the Marital Deduction Trust property were not includible in my spouse's gross estate for federal estate tax purposes. In making such transfer to my spouse's legal representatives, the fiduciary shall be entitled to rely upon and treat as correct, without investigation, any such written request from my spouse's legal representatives. The balance of such unappointed property shall then be added to and form a part of my residuary estate disposed of in Paragraphs "1" and "3" of Subdivision "B" of this Article and be dealt with and disposed of accordingly, as if I had died immediately following the death of my spouse. Paragraphs 1 and 3 referred to in the preceding sentence provide for the establishment of the trusts for the benefit of Mrs. Flanigan's children and grandchildren. On *308 November 15, 1976, within six months of Mrs. Flanigan's death, Mr. Flanigan executed an affidavit in which he stated the following: Under * * * my wife's said will, I am entitled for life to the net income from a Trust thereby created and I have a general testamentary power of appointment thereunder. I make this affidavit, pursuant to the provisions of Section 2055(b)(2) of the Internal Revenue Code, and hereby declare my intent to exercise by my last will and testament the power of appointment given to me under * * * my wife's said will, and to appoint all of the same to The Aimee M. and Horace C. Flanigan Foundation (a New York charitable organization) and if, at the time of my death, said Foundation shall not then be in existence and not be an organization described in Section 2055(a) of the Internal Revenue Code of 1954, as the same may be amended from time to time, then I hereby declare my further intent to exercise said power by my will not to direct therein the division thereof into such number of equal shares (not in excess of nineteen) as shall be effectively disposed of and to appoint the same as follows to such of the *309 * * * [qualified charities] hereinafter named, as shall at the time of my death be in existence * * *. The names of the alternate charities and the number of shares that each was to receive were specifically set forth. No part of the corpus of the marital deduction trust was distributed to any beneficiary during Mr. Flanigan's life. The last will of Mr. Flanigan which was executed on November 15, 1976, provided as follows with respect to the exercise of the power of appointment given to him by Mrs. Flanigan's will: In the exercise of such power of appointment, I hereby direct the fiduciary of the Marital Deduction Trust upon my death to transfer and pay over * * * [to the Aimee M. and Horace C. Flanigan Foundation, if such organization is a qualified charity, or alternatively to certain other enumerated qualified charitable organizations] such proportion including the whole thereof, of the principal of the Marital Deduction Trust, as then constituted, which shall be equal to the lesser of (1) such proportion of the principal of the Marital Deduction Trust allowable as a deduction for federal estate tax purposes in my estate under Section 2055(a) of the Code, and (2) such *310 proportion of the principal of the Marital Deduction Trust upon which for federal estate tax purposes in my late wife's estate a deduction pursuant to Section 2055(b)(2) of the Code is allowable for the remainder interest of the Marital Deduction Trust * * *. On the Federal estate tax return filed by the estate of Mrs. Flanigan, a marital deduction in the amount of $7,248,732.79 was claimed. The return stated that $6,580,975.29 of this amount was attributable to the interest of Mr. Flanigan in the marital deduction trust Mrs. Flanigan in her will directed be established. The estate on the return also claimed a charitable deduction in the amount of $5,570,290.07. It was stated on the return that $5,267,741.67 of this amount was attributable to the value of the remainder interest in the marital deduction trust which Mr. Flanigan by affidavit stated he intended to appoint to charity. On the Federal estate tax return filed by Mr. Flanigan's estate, a charitable deduction in the amount of $6,818,218.29 was claimed. All of such amount was based on his exercise of the general power of appointment over the marital deduction trust in favor of a qualified charity. Respondent in his *311 statutory notice determined that no charitable deduction was allowable to Mrs. Flanigan's estate for the remainder interest of the marital deduction trust giving the following explanation: (c) It is determined that the remainder interest of the Marital Deduction Trust created under the sixth article of the will, dated January 14, 1975, of Aimee M. Flanigan, as appointed by Horace C. Flanigan (in the second article of his will), does not meet the requirements of section 2055(e)(2) of the Code so as to qualify as an allowable charitable deduction to the Estate of Aimee M. Flanigan, pursuant to section 2055(a). Therefore, the reduction of the gross estate for the value of such interest (item number four of Schedule N) was improper. Accordingly, the taxable estate is increased $5,267,741.67. Respondent in his statutory notice of deficiency to the estate of Mr. Flanigan asserted that no charitable deduction was allowable to the estate with the following explanation: (g) It is determined that the second article of the will, dated November 15, 1976, of Horace C. Flanigan, deceased, exercises his power of appointment over the remaining principal and accrued and undistributed income *312 of the Marital Deduction Trust created by the will, dated January 14, 1975, of his predeceased spouse, Aimee M. Flanigan. The second article of Horace C. Flanigan's will also instructs the trustee of said Marital Deduction Trust to transfer to certain named charities the lesser of the charitable deductions allowable under Section 2055 of the Code in either his estate tax return or the estate tax return of his predeceased spouse. In the statutory notice issued to the Estate of Aimee M. Flanigan, it has been determined "that the remainder interest of the Marital Deduction Trust created under the sixth article of the will, dated January 14, 1975, of Aimee M. Flanigan, as appointed by Horace C. Flanigan, does not meet the requirements of Section 2055(e)(2) of the Code so as to qualify as an allowable charitable deduction to the Estate of Aimee M. Flanigan, pursuant to section 2055(a). Therefore, the reduction of the gross estate for the value of such interest (item four of Schedule N) was improper." Since the will of Horace C. Flanigan reflects his intention that the charities named therein are to receive nothing if his spouse's estate is denied a charitable deduction for the remainder *313 interest of the Marital Deduction Trust and since the statutory notice to the spouse's estate has disallowed any such deduction, it is hereby determined that nothing will pass to charity under the will of Horace C. Flanigan, and, therefore, his gross estate should not have been reduced by the amount reported on Schedule N of the estate tax return filed for his estate. Accordingly, the taxable estate is increased $6,818,218.29.
Section 2055(a) generally provides for a deduction from the value of the gross estate of all bequests, legacies, devises, or transfers made to qualified charities. Section 2055(b)(1)[2] provides that property includable in decedent's gross estate under section 2041 (relating to powers of appointment) received by a charity shall "for purposes of this section, be considered a bequest of such decedent." *314 Section 2055(b)(2)[3] provides that "for purposes of this section" a bequest in trust by a decedent to his spouse with a general power of appointment in the spouse over the corpus of the trust shall, to the extent the power is exercised in favor of a charity, be deemed a transfer by the decedent to the charity of the trust corpus reduced by the value of the life estate if certain specific conditions are met. *315 The conditions are that (1) no part of the corpus of the trust is distributed to any beneficiary during the life of the surviving spouse; (2) the surviving spouse is 80 years old at the date of decedent's death; (3) the surviving spouse executes an affidavit within six months after decedent's death specifying the charities in favor of which he plans to exercise the power; and (4) the power of appointment is exercised in favor of the charities specified in the affidavit. Section 2055(e)(2)(A) provides generally that no deduction under section 2055 is allowed for an interest in property if the same property passes or has passed from the decedent to or for the use of both a charity and a person other than a charity, unless such remainder interest is in a trust which is a charitable remainder annuity trust or a charitable remainder unitrust or a pooled income fund. Counsel for petitioners concedes that Mr. Flanigan's estate is allowed a charitable deduction only if a charitable deduction is allowable to Mrs. Flanigan's estate. We will therefore first consider whether her estate is entitled *316 to a charitable deduction with respect to any portion fo the corpus of the trust created in her will for Mr. Flanigan's benefit. The record is clear that the four specific conditions set forth in section 2055(b)(2) are met if Mr. Flanigan is considered to have exercised his power of appointment in favor of a charity. Respondent contends that even though these specific conditions are met, no deduction is allowable to Mrs. Flanigan's estate because the remainder interest to charity does not meet the requirements of section 2055(e)(2)(A). He points out that the remainder interest is not an interest in a trust which is a charitable remainder annuity trust or a charitable remainder unitrust or a pooled income fund. Petitioners recognize that the requirements of section 2055(e)(2)(A) are not met. They contend that this provision is inapplicable to section 2055(b)(2) under which Mrs. Flanigan is deemed to have made a transfer to charity. Petitioners argue that our express holding to the contrary in Estate of Hoskins v. Commissioner,71 T.C. 379 (1978), is incorrect. The two principal arguments made by petitioners in support of the contention that the Hoskins *317 case was incorrectly decided are (1) that section 2055(e)(2)(A) is by its own terms inapplicable where there is a deemed transfer of an interest under section 2055(b)(2) since section 2055(e)(2)(A) is only operative where split interests in the same property pass to charitable and noncharitable beneficiaries and (2) that where there is a conflict between a narrowly drawn provision such as section 2055(b)(2) and a rule of general application such as section 2055(e)(2)(A), under the rule of ejusdem generis, the statute should be interpreted in a manner giving the specific provision its fullest application. In support of their first position, petitioners contend that no actual transfer was made by Mrs. Flanigan and therefore by its terms section 2055(e)(2)(A) is inapplicable to the charitable deduction allowed by section 2055(b)(2) to her estate. Secondly, petitioners contend that if section 2055(b)(2) is interpreted to provide that Mrs. Flanigan did make a transfer to charity to which section 2055(e)(2)(A) to her estate. Secondly, petitioners contend that if section 2055(b)(2) is interpreted to provide that Mrs. Flanigan did make a transfer to charity to which section 2055(e)(2)(A) *318 is applicable, the result would be a repeal by implication of section 2055(b)(2) contrary to proper statutory construction. In our view, there is no merit to petitioners' contention that Mrs. Flanigan made no transfer to charity within the meaning of section 2055(e)(2)(A). Petitioners argue that while a transfer to charity was deemed to have been made by Mrs. Flanigan, the only actual transfers made by her consisted of a life interest in the marital deduction trust to Mr. Flanigan and a power of appointment to him over the remainder interest in such trust. Petitioners are essentially arguing that while there is a "transfer" to charity by Mrs. Flanigan under section 2055(b)(2), there is no transfer for section 2055(e)(2)(A) purposes. The express language of the statute, however, is to the contrary. Section 2055(b)(2) states as follows: For purposes of this section * * * such bequests in trust, reduced by the value of the life estate, shall, to the extent such power is exercised in favor of such organizations, be deemed a transfer to such organizations by the decedent if * * * [certain *319 prescribed conditions are met]. The affidavit referred to * * * [above] shall be attached to the estate tax return of the decedent and shall constitute a sufficient basis for the allowance of the deduction * * *. Thus, the literal language of section 2055(b)(2) states that a "transfer" is deemed to have occurred for purposes of all of section 2055, including section 2055(e)(2)(A). Although not so stated, and in fact denied by petitioners, the substance of their argument is that section 2055(b)(2) should be viewed as a separate and independent allowance provision. In Estate of Hoskins v. Commissioner,supra, we addressed a similar argument and exhaustively analyzed section 2055 and all of its subsections in concluding to the contrary. In that case we stated as follows (at 386-387): The structure of section 2055 shows that section 2055(a) predominates and that no other subsection of section 2055 should be viewed as an independent allowance provision. In addition to the inherent restrictions within section 2055(a) concerning the basic, required characteristics of the transfer (or bequest, or legacy, or devise), section 2055(c), (d), and (e) disallow *320 a deduction for all or part of the amount of the transfer to charity. Section 2055(c) disallows a deduction for that portion of the transferred property which is chargeable with the payment of any estate, succession, legacy, or inheritance taxes; section 2055(d) disallows a deduction for the value of transferred property which is not included in the gross estate; section 2055(e)(2)(A) disallows a deduction for the value of a remainder interest transferred to charity unless such interest is in the form of an annuity trust, a unitrust, or a pooled income fund. Section 2055(b)(2) provides certain definitional rules as to when the exercise of a power of appointment by a surviving spouse will be deemed a transfer to charity by the decedent. The subsections of section 2055 are so vital to the purpose of the entire section and constitute such an integral part of its application as to place beyond reasonable doubt that even subsection 2055(a), which grants the charitable deduction in the first instance, cannot itself stand alone. The only allowance language contained in section 2055(b)(2) is in the last sentence of the subjection where it is stated that the affidavit referred to in the *321 subsection "shall constitute a sufficient basis for the allowance of the deduction under this paragraph." We view this phrase as being intended to do no more than provide that the affidavit of the surviving spouse shall, for purposes of section 2055(a), be treated as being irrevocable, even though such an affidavit is not irrevocable or binding under local law. The mere fact that the affidavit is deemed to be an instrument of "transfer" from the decedent is not a sufficient basis for allowance of a deduction under section 2055(a) because the affidavit is revocable at the pleasure of the affiant. The last sentence of section 2055(b)(2) cures the revocability defect that is inherent in the nature of the affidavit. Otherwise, the sentence does not affect or nullify any of the basic restrictions or requirements of the other subsections of section 2055. In our judgment, the plain language of the statute demonstrates that subsection (b)(2) of section 2055 was not meant to operate exclusive of subsections (a), (c), (d), or (e). We conclude that, for the purposes of section 2055(a), section 2055(b)(2) treats Mrs. Flanigan as having transferred a life interest in the property to her *322 husband and a memainder interest in the same property to charity. [4] Thus, we do not accept petitioners' argument that there is no transfer to which section 2055(e)(2)(A) is applicable. *323 Petitioners, secondly, argue that in Hoskins we arrived at an interpretation of the statute which in effect results in a repeal of section 2055(b)(2) by implication. They state that it is impossible to satisfy both the requirements of section 2055(b)(2) and section 2055(e)(2)(A). Petitioners point out that it is a cardinal rule of statutory construction that repeals by implication are not favored. See Morton v. Mncari,417 U.S. 535, 549 (1974). In Hoskins, at 384, we stated that in our view while the passage of section 2055(e)(2)(A) did not repeal section 2055(b)(2)(A), it severely limited the application of that provision. Petitioners, in the instant case, argue that in Hoskins we never adequately addressed the repeal by implication argument. Petitioners maintain that, under our interpretation of the statute, section 2055(b)(2) would have continuing application only in those situations in which the effective provision governing section 2055(e)(2)(A) made section 2055(e)(2)(A) inapplicable; that is, where a will had been executed by a decedent prior to October 9, 1969, and either (1) such decedent had died before October 9, 1972, without having *324 republished the will after October 9, 1969, or (2) where the will had not been republished before October 9, 1972, and at such date and at all times thereafter the decedent was under a mental disability which prevented him from republishing the will. See section 201(g)(4)(A) through -(C), Tax Reform Act of 1969, Pub. L. 91-172, 83 stat. 487, and also fn. 6, infra. Petitioners assert that Congress could not possibly have intended section 2055(b)(2) to have such severely limited application, and that, therefore, section 2055(b)(2) and section 2055(e)(2)(A) must be viewed as being mutually exclusive so that a situation covered under section 2055(b)(2) will be excepted from the requirements of section 2055(e)(2)(A). In Morton v. Mancari,supra at 550, the Court stated: In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and the later statutes are irreconcilable. Georgia v. Pennsylvania R. Co.,324 U.S. 439, 456-457 (1945). * * * Since there is nothing in the *325 legislative history of section 2055(b)(2) to show the underlying reason or policy for its enactment (see Estate of Pfeifer v. Commissioner,69 T.C. 294, 299-300, 305 (1977)), if that section is considered in direct conflict with the later enacted section 2055(e)(2)(A), this later enacted section must prevail. Section 2055(e)(2) was added by the Tax Reform Act of 1969 to correct abuses in the charitable deduction area regarding transfers of an income interest in property to a private person followed by a remainder to charity. The primary purpose of section 2055(e)(2) is "to prevent possible abuses resulting from manipulation of the income stream from donated property in favor of a noncharitable tenant * * * to the detriment of the charitable remainderman." Estate of Brock v. Commissioner,71 T.C. 901, 909 (1979), affd. 630 F.2d 368 (5th Cir. 1980). Congress was concerned that a trust could pursue a policy of investing in high-income, high-risk assets, thus favoring the life tenant at the expense of the charitable remainderman. H. Rept. No. 91-413 (part 1) (1969), 1969-3 C.B. 200, 237-238. See Estate of Brock v. Commissioner,supra at 908-909. *326 Petitioners, while acknowledging the above to be the main purpose of Congress in enacting section 2055(e)(2)(A), argue that section 2055(b)(2) contains adequate safeguards of its own. Since the surviving spouse life tenant must be at least 80 years of age and presumably will have a short lifespan, petitioners contend that any possible manipulation of the income stream in his favor can be dismissed as de minimis. We are unwilling to presume that an octogenarian will always have a short lifespan, much less to assume that since in general as a group octogenarians will have a shorter projected lifespan than other persons in younger age groups, the possibility of abuse is so slight that a further, unstated exception, in effect, can be made to section 2055(e)(2)(A). Estate of Brock,supra at 910. Compare Estate of Blackford v. Commissioner,77 T.C. 1246, 1251-1252 (1981). We therefore conclude that the circumstance surrounding transfers covered by section 2055(b)(2) can fall within the abuses with which Congress was concerned in enacting section 2055(e)(2)(A). Therefore, even though section 2055(b)(2) was severely limited by the provisions of section *327 2055(e)(2)(A), we conclude that this fact does not justify holding section 2055(e)(2)(A) to be inapplicable to transfers to which section 2055(b)(2) is applicable. Petitioners contend that if we conclude that because of section 2055(b)(2)(A) a transfer of a remainder interest to charity was made by Mrs. Flanigan, we should hold that transfer to be excepted from meeting the requirements of section 2055(e)(2)(A) under the rule of ejusdem generis.
Section 2055(e)(2)(A) was enacted as part of the Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 487, section 201(d)(1). As passed by the 91st Congress and enacted into law, section 2055(e)(2)(A) provided as follows: Where an interest in property (other than a remainder interest in a personal residence or farm or an undivided portion of the decedent's entire interest in property) passes or has passed from the decedent to a * * * [charity or for a charitable use] and an interest * * * in the same property passes or has passed * * * from the decedent to a person * * * [or organization other than a charity or for other than a charitable use], *328 no deduction shall be allowed under this section for the interest which passed or has passed to the * * * [charity] unless-- (A) in the case of a remainder interest, such interest is in a trust which is a charitable remainder annuity trust or a charitable remainder unitrust * * * or a pooled income fund * * *. [5]
*329 Based on the express lnguage of the statute, we stated in the Hoskins case that we viewed section 2055(e)(2)(A) as an overriding disallowance provision applicable to all decedents except as specifically noted and accordingly rejected the ejusdem generis argument raised by the taxpayer in that case. For reasons stated in that case as well as herein, we conclude that our interpretation of the statute in the Hoskins case is valid and proper. In Helvering v. Stockholms Enskilda Bank,293 U.S. 84 (1934), the Supreme Court made the following observation as to the rule of statutory construction known as ejusdem generis (at 89): But, while the rule is a well-established and useful one, it is, like other canons of statutory construction, only an aid to the ascertainment of the true meaning of the statute. It is neither final nor exclusive. To ascertain the meaning of the words of a statute, they may be submitted to the test of all appropriate canons of statutory construction, of which the rule of ejusdem generis is only one. If, upon a consideration of the context and the objects sought to be attained and of the act as a whole, it adequately appears that *330 the general words were not used in the restricted sense suggested by the rule, we must give effect to the conclusion afforded by the wider view in order that the will of the Legislature shall not fail. In that case, the Court was faced with interpreting a statute which provided as follows: Sec. 217. (a) In the case of a nonresident alien individual, * * * the following items of gross income shall be treated as income from sosurces within the United States: (1) Interest on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise, not including (A) interest on deposits with persons carrying on the banking business paid to persons not engaged in business within the United States and not having an office or place of business therein, * * * The Revenue Act of 1926, 44 Stat. 9, provided that in the case of a foreign corporation gross income would only include gross income from sources within the United States, determined in the manner provided in the statute quoted above. The taxpayer contended that the interest paid to it on a tax refund was not from a source within the United States under the statute in issue because such income was not interest *331 upon an interest-bearing obligation in the nature of a bond or note. After giving general reasons why it believed that Congress intended such income to be taxable, the Court stated the following (at 90): The foregoing views are put beyond all fair doubt, if otherwise any would remain, by the consideration of a qualification contained in the section itself. After declaring that interest on bonds, notes, or other interest-bearing obligations shall be treated as income from sources within the United States, the section immediately proceeds to exclude from that language "interest on deposits with persons carrying on the banking business paid to persons not engaged in business within the United States. * * *" It is apparent from this exception that Congress understood that, unless the exception were made, the interest on such deposits would fall within the term "interest-bearing obligations," and, to prevent that result, it was necessary to specifically create the exception. The conclusion fairly results that the clause was intended to include all interest-bearing obligations not specifically excepted. Likewise, section 2055(e)(2)(A) has certain carefully enumerated exceptions. *332 A parenthetical exception is made for a contribution of the remainder interest in a personal residence or farm. Transfer of a remainder interest in a personal residence or farm therefore, need not meet the general requirement of section 2055(e)(2)(A) that the remainder interest be in a trust which is a charitable remainder annuity trust or charitable remainder unitrust or a pooled income fund. The legislative history of section 2055(e)(2)(A) shows that the exception made for remainder interests in a personal residence or farm as well as the provision concerning remainder interests in a pooled income fund arose from amendments proposed by the Senate. This legislative history, in pertinent part, states as follows: Although, as indicated above, the committee is in general agreement with the House regarding the need for a closer correlation between the charitable contributions deduction allowed for a gift of a remainder interest to charity and the benefit ultimately received by the charity, the committee believes that the House provision is unduly restrictive. The requirement that a deduction is to be allowed only if the remainder interest given to charity is in the form of an annuity *333 trust or unitrust could have a significant adverse effect on established forms of charitable giving, such as pooled income fund arrangements, and outright gifts of real property, such as a residence, where the donor reserves a life estate in the property. Since these types of charitable giving cannot be framed in the form of an annuity trust or unitrust, the House provision would deny a deduction for the charitable gift. The committee believes that it is possible to continue to allow a charitable deduction in these types of cases with appropriate limitations, however, to prevent the overstating of the charitable contribution deduction. Explanation of provision.-- * * * In addition, under the committee amendment a deduction is to be allowed for a gift of a charitable remainder interest in trust which takes the form of a transfer of property to a pooled income fund. (The definition of a pooled income fund is discussed in No. 6 above.) In order to prevent manipulation to overstate the appropriate charitable contribution deduction in the case of this type of gift, it is further provided that the amount of the charitable contribution deduction allowed the donor upon the transfer *334 of property to the pooled income fund is to be determined by valuing the income interest on the basis of the highest rate of return earned by the particular pooled income fund in any of the three taxable years preceding the taxable year of the fund in which the transfer occurs. Where a fund has not been in existence for this period of time, the rate of return is to be assumed to be 6 percent, unless a different rate is prescribed by the Secretary of the Treasury or his delegate. Another additional situation in which the committee amendments allow a charitable contribution deduction for the gift of a remainder interest to charity is in the case of a nontrust gift of a remainder interest in real property to charity. Thus, for example, a charitable contribution deduction is to be allowed where an individual makes a gift of his residence to charity and retains the right to live in the residence for his life. The committee does not believe that this type of situation generally presents the kind of abuse which both the House and the committee believe it appropriate to curtail. Nevertheless, a limited valuation problem is presented even in this type of situation, and for this reason *335 it is further provided that in determining the value of a remainder interest in real property which is given to charity, straight-line depreciation and cost depletion are to be taken into account. Thus, there will be an appropriate reflection in the value of the charitable gift of the decrease in value of the property which may occur as a result of the depreciation or depletion of the property. In addition, the committee contemplates that the Secretary of the Treasury or his delegate will provide that the rate of return to be used in valuing this type of charitable gift is one which is reasonable in view of the interest rates and investment returns prevailing at the time of the gift. At the present time, a 6 percent rate of return would appear appropriate to the committee. As indicated above, the committee has retained with minor modifications the annuity trust and unitrust rules of the House bill. Under the House provision, an annuity trust is one which specifies in dollar terms the amount of the annuity which is to be paid to the income beneficiary. The trust also must require the income payments to be made at least annually. A unitrust is a trust which specifies that the *336 income beneficiary is to receive annual payments based on a fixed percentage of the net fair market value of the trust's assets, as determined each year. The income interest in either case may either be for a term of years or for the life of the income beneficiary. [S. Rept. No. 91-552 (1969), 1969-3 C.B. 423, 479-480.] The conference committee followed the Senate's amendments, but limited their scope by permitting deductions for remainder interests in real property to personal residences or farms. Conf. Rept. No. 91-782 (1969), 1969-3 C.B. 644, 654-655. See Estate of Brock v. Commissioner,supra at 908-909 In view of the fact that the statute makes appropriate exceptions where Congress felt such exceptions to be warranted, we do not accept petitioners' contention that a transfer covered under section 2055(b)(2) should be viewed as being excepted from meeting the requirements of section 2055(e)(2)(A). [6]
We hold, therefore, that no charitable deduction is allowable to the estate of Mrs. Flanigan because the requirements of section 2055(e)(2)(A) have not been met. *337 Since Mr. Flanigan in his will clearly stated that he intended to exercise the power of appointment only to the extent that Mrs. Flanigan's estate also received a charitable deduction, he did not utilize such power of appointment so as to result in his making a transfer to charity under section 2055(b)(1). See section 20.2055-1(b)(1), Estate Tax Regs. As a result of his non-exercise of the power of appointment, the corpus of the marital trust was disposed of according to the provisions of Mrs. Flanigan's will. Under her will the property will either be used to recompense Mr. Flanigan's estate or go into trusts for the benefit of her children and grandchildren. Since no property thus passed to charity, we find that Mr. Flanigan's estate is not entitled to a charitable deduction. [7]
*338 Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. Sec. 2055(b)(1) states as follows: (b) Powers of Appointment.-- (1) General rule.--Property includible in the decedent's gross estate under section 2041↩ (relating to powers of appointment) received by a donee described in this section shall, for purposes of this section, be considered a bequest of such decedent.
3. Sec. 2055(b)(2) states as follows: (2) Special rule for certain bequests subject to power of appointment.--For purposes of this section, in the case of a bequest in trust, if the surviving spouse of the decedent is entitled for life to all of the net income from the trust and such surviving spouse has a power of appointment over the corpus of such trust exercisable by will in favor of, among others, organizations described in subsection (a)(2), such bequests in trust, reduced by the value of the life estate, shall, to the extent such power is exercised in favor of such organizations, be deemed a transfer to such organizations by the decedent if-- (A) no part of the corpus of such trust is distributed to a beneficiary during the life of the surviving spouse; (B) such surviving spouse was over 80 years of age at the date of the decedent's death; (C) such surviving spouse by affidavit executed within 6 months after the death of the decedent specifies the organizations described in subsection (a)(2) in favor of which he intends to exercise the power of appointment and indicates the amount or proportion each such organization is to receive; and (D) the power of appointment is exercised in favor of such organization and in the amounts or proportions specified in the affidavit required under subparagraph (C). The affidavit referred to in subparagraph (C) shall be attached to the estate tax return of the decedent and shall constitute a sufficient basis for the allowance of the deduction under this paragraph in the first instance subject to a later disallowance of the deduction if the conditions herein specified are not complied with. Sec. 2055(b)(2) was added to the Code by Pub. L. 1011, 84th Cong., 2d Sess., in 1956 but was made retroactively effective for decedents dying after August 16, 1954. Sec. 2055(b)(2)↩ was removed from the Internal Revenue Code as part of the so-called "deadwood" repeal provisions by the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, sec. 1902(a)(4)(A). The repeal was effective for estates of decedents dying after October 4, 1976.
4. Petitioner cites the decisions in Estate of Miller v. Commissioner,400 F. 2d 407 (3d Cir. 1968), affg. Estate of Edna Allen Miller v. Commissioner,48 T.C. 251 (1967) and revg. Estate of Hugh Gordon Miller v. Commissioner,48 T.C. 265 (1967), and Estate of Pfeifer v. Commissioner,69 T.C. 294 (1977), as being to the contrary. We disagree. As was noted in Estate of Hoskins, fn. 5 at 71 T.C. 384, none of these cases were concerned with the effect of sec. 2055(e)(2)(A) on sec. 2055(b)(2) because sec. 2055(e)(2) was not applicable as to the estates of these decedents who had died before its effective date. Furthermore, it is important to keep in mind that in such prior group of cases issues were raised as to three deductions: (1) the entitlement of the first decedent's estate to a marital deduction for the property in the marital trust under sec. 2056(b)(5), (2) the allowance to the first decedent's estate of a charitable deduction for the remainder interest in such trust deemed to pass from such decedent to charity under sec. 2055(b)(2), and (3) the entitlement of the surviving spouse's estate to a charitable deduction under sec. 2055(b)(1) for the surviving spouse's exercise of the power of appointment so as to cause the property in the same marital trust to go to charity. As to the first decedent's estate being entitled to a charitable deduction for the remainder interest in the marital trust where it would already receive a marital deduction for the full value of the property in the trust, we rejected respondent's contention that a charitable deduction was available only if no marital deduction was allowable. Estate of Edna Allen Miller v. Commissioner,supra at 257-260. We next rejected respondent's contention that no marital deduction was available since the surviving spouse must be deemed at most to have received a life estate which would be a terminable interest under sec. 2056(b)(1), since a remainder interest is deemed to have been transferred to charity under sec. 2055(b)(2). As we pointed out, Estate of Edna Allen Miller,supra at 261-262, for purposes of the marital deduction the terminability of an interest is to be determined as of the date of the first decedent's death, and since the affidavit was executed by the surviving spouse after such date, the allowability of a marital deduction was not affected by any action taken by the surviving spouse. The Third Circuit Court of Appeals affirmed our holding that the first decedent's estate was entitled to both a marital deduction and a charitable deduction. Estate of Miller,↩ 400 F.2d at 410-412.
5. The Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, sec. 2124(e), amended the statute by striking the language of the parenthetical exception "(other than an interest in a personal residence or farm or an undivided interest in property)" and replacing it with the language "(other than an interest described in section 170(f)(3)(B))". This change thereby made an additional exception for a "qualified conservation contribution." See sec. 170(f)(3)(B)(iii). Thus, under such amendment a deduction was to be allowed for the-- contribution to a charitable organization exclusively for "conservation purposes" of 1) a lease on, option to purchase, or easement with respect to real property of not less than 30 years' duration or 2) a remainder interest in real property. The term "conservation purposes" is defined to mean the preservation of land areas for public recreation, education, or scenic enjoyment, the preservation of historically important land areas or structures, or the preservation of natural environmental systems. Conf. Rept. No. 94-1515, 94th Cong., 2d Sess. (1976) 505-506. Deductions under such amendment were to be allowed for charitable contributions and transfers made after June 13, 1976, and before June 14, 1977. However, sec. 309(b)(2), Pub. L. 95-30, 91 Stat. 154, changed such latter date to June 14, 1981.↩
6. In view of the express language of sec. 2055(e)(2)(A) and the quoted legislative history, we are not persuaded by the additional arguments made by petitioners in urging us to come to a contrary interpretation of the statute. One such argument made by petitioners was that sec. 2055(b)(2) is a specific statute which ought to control over the general statute, sec. 2055(e)(2)(A). Based on the fact that sec. 2055(b)(2) was only repealed for the estates of decedents dying after October 4, 1976, by the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, sec. 1902(a)(4)(A), petitioners argue that sec. 2055(b)(2) must be accorded equal and coordinate status with sec. 2055(b)(2)(A). However, as previously discussed, we have concluded that sec. 2055(b)(2) is not a separate, independent allowance provision. Further, we fail to see how petitioners derive any support from the fact that sec. 2055(b)(2) was repealed in a deadwood provision measure passed by the 94th Congress. The Senate Report states that while the provisions contained in the title "are an attempt to simplify the code by deleting 'deadwood,' they do not attempt to achieve simplification through substantive changes in present law." S. Rept. No. 94-938 (1976), 1976-3 C.B. (vol. 3) 57, 529. See also H. Rept. No. 94-658 (1975), 1976-3 C.B. (vol. 2) 701, 1064. In our view, this repeal of sec. 2055(b)(2) as being deadwood does not support petitioners' contention that such sub-provision should be accorded equal and coordinate status with sec. 2055(e)(2)(A). Neither have we found any merit to petitioners' other contention that by later action Congress implicitly indicated that the sec. 2055(b)(2) situation should be viewed as being a further, unstated exception to sec. 2055(e)(2)(A). Sec. 2055(e)(2)(A) was passed into law as part of the Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 487, sec. 201(d)(1). Under the Excise, Estate and Gift Tax Adjustment Act of 1970, Pub.L. 91-614, sec. 101(c), 84 Stat. 1836, sec. 2055(b)(2) was amended to provide that the surviving spouse must execute an affidavit within six months after the date of decedent's death, rather than within the one-year period previously required. Such a change was part of a general procedural change effective for decedents dying after December 31, 1970, requiring the estate tax return to be filed within nine months after the date of a decedent's death, rather than within the 15-month period previously required. S. Rept. No. 91-1444 (1970), 1971-1 C.B. 574, 576-577. Sec. 2055(e)(2)(A), however, while generally made applicable to decedents dying after December 31, 1969, had been made inapplicable in the case of property passing under the terms of a will executed on or before October 9, 1969-- (1) if the decedent had died before October 9, 1972, without having republished the will after October 9, 1969, by codicil or otherwise, (2) if the decedent at no time after October 9, 1969, had the right to change the portions of the will pertaining to the passing of the property to charity, or (3) if the will is not republished by codicil or otherwise before October 9, 1972, and the decedent is on such date and at all times thereafter under a mental disability to publish the will by codicil or otherwise. Analogous provisions were also made in the case of property transferred in trust on or before October 9, 1969. Sec. 201(g)(4)(A) through -(C), Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 487. See also S. Rept. 91-552 (1969), 1969-3 C.B. 423↩, 482.
7. Because of our holding with respect to respondent's principal contention, we do not reach the issue of whether his alternative contention in his brief that in any event a charitable deduction must be disallowed to the estate of Mrs. Flanigan because the power of the trustees to invade the corpus of the trust was not limited by an ascertainable standard is properly before us and, if it is, the merits of respondent's position.↩